UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| BLAKE LIVELY,<br><br>                    Movant,<br><br>v.<br><br>THE SKYLINE AGENCY LLC and ROZA KALANTARI,<br><br>                    Respondents. | No. 3:25-mc-63 |

**BRIEF IN SUPPORT OF RULE 45(d) MOTION TO COMPEL
THE SKYLINE AGENCY LLC AND ROZA KALANTARI
<u>TO PRODUCE DOCUMENTS WITHHELD ON PRIVILEGE GROUNDS</u>**

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................................ ii

INTRODUCTION ............................................................................................................................... 1

BACKGROUND ................................................................................................................................. 2

LEGAL STANDARD .......................................................................................................................... 5

ARGUMENT ....................................................................................................................................... 6

    I.    The Materials Withheld by the Skyline Parties Are Not Privileged
        and Must Be Produced. ........................................................................................................ 6

CONCLUSION .................................................................................................................................. 12

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Adams v. Mem'l Hermann*,
   973 F.3d 343 (5th Cir. 2020) ..................................................................................................6

*Bloomingburg Jewish Educ. Ctr. v. Vill. of Bloomingburg, New York*,
   171 F. Supp. 3d 136 (S.D.N.Y. 2016)...................................................................................8, 9

*Calvin Klein Trademark Tr. v. Wachner*,
   198 F.R.D. 53 (S.D.N.Y. 2000) .....................................................................................6, 8, 10

*Doe 1 v. Baylor Univ.*,
   No. 6:16-CV-173-RP, 2019 WL 13253800 (W.D. Tex. Apr. 16, 2019) ..................................9

*EEOC v. BDO USA, L.L.P.*,
   876 F.3d 690 (5th Cir. 2017) ...................................................................................................5

*Haugh v. Schroder Inv. Mgmt. N. Am. Inc.*,
   No. 02-CV-7955, 2003 WL 21998674 (S.D.N.Y. Aug. 25, 2003) (Cote, J.) ..........................9

*Lively v. Wayfarer Studios LLC, et al.*,
   No. 1:24-cv-10049-LJL ...........................................................................................1, 2, 3, 4

*Mitsui O.S.K. Lines, Ltd. v. Seamaster Logistics, Inc.*,
   No. 12–mc–00275, 2013 WL 238176 (S.D.N.Y. Jan. 18, 2013) (Nathan, J.)....................7, 11

*In re Nw. Senior Hous. Corp.*,
   No. 22-30659, 2023 WL 2938386 (Bankr. N.D. Tex. Apr. 13, 2023) ................................8, 9

*Smith v. Pergola 36 LLC*,
   2022 WL 17832506 (S.D.N.Y. Dec. 21, 2022) ............................................................5, 7, 11

*Spencer-Smith v. Ehrlich*,
   No. 23-CV-2652, 2024 WL 4416581 (S.D.N.Y. Oct. 4, 2024).........................................10, 11

*Tower 570 Co. LP v. Affiliated FM Ins. Co.*,
   No. 20-CV-0799 (JMF), 2021 WL 1222438 (S.D.N.Y. Apr. 1, 2021) .....................................7

*United States v. Fluitt*,
   99 F.4th 753 (5th Cir. 2024) ........................................................................................8, 9, 10

*United States v. Krug*,
   868 F.3d 82 (2d Cir. 2017)....................................................................................................11

*Universal Standard Inc. v. Target Corp.*,
    331 F.R.D. 80 (S.D.N.Y. 2019) ................................................................................5, 6, 9, 10

*In re Welspun Litig.*,
    No. 16-CV-6792, 2018 WL 4693587 (S.D.N.Y. Sept. 21, 2018) (Sullivan, J.) ........................7

*Wultz v. Bank of China Ltd.*,
    304 F.R.D. 384 (S.D.N.Y. 2015) ..............................................................................................10

**Other Authorities**

Fed. R. Civ. P. 45(f) ..........................................................................................................................2

Fed. R. Civ. P. 26(b)(3) ..............................................................................................................6, 10

## INTRODUCTION

This motion to compel arises out of Ms. Lively's lawsuit in the Southern District of New York against Justin Baldoni, Jamey Heath, Steve Sarowitz, Wayfarer Studios LLC, It Ends With Us Movie LLC, Jen Abel, The Agency Group PR LLC ("TAG"), and Melissa Nathan (together, the "Wayfarer Parties"), and Street Relations Inc. and Jed Wallace (the "Wallace Parties," and together with the Wayfarer Parties, "Defendants") for sexual harassment she suffered on the set of *It Ends With Us*, and the subsequent campaign of retaliation and character assassination that the Defendants conspired to unleash against her when she spoke up about that mistreatment.[1] The Skyline Parties are The Skyline Agency LLC ("Skyline"), a Dallas-based digital marketing and design services company, and Roza Kalantari, Skyline's chief marketing officer. Documents obtained in discovery, and other privilege logs, show that Ms. Kalantari was copied on or discussed by name on communications among Defendants and their counsel dating back to the earliest days of the retaliatory campaign in August 2024. In March and April 2025, respectively, Ms. Lively issued subpoenas to the Skyline Parties, who responded but withheld numerous documents on privilege grounds.

Ms. Lively brings this motion to compel production of those documents because the claimed privileges—attorney-client, attorney-work-product, and common interest—are baseless. Ms. Kalantari's presence on the communications is, by itself, sufficient to destroy any privilege, because she is a third party to the attorney-client relationship at issue and was not, in any event, involved in the provision of legal advice—as opposed to a public-facing media strategy. Indeed, the privilege log asserts that the topic of the withheld communications was "building" a "website,"

---

[1] *See Lively v. Wayfarer Studios LLC, et al.*, No. 1:24-cv-10049-LJL ("SDNY Litigation"), Second Amended Complaint, SDNY Dkt. No. 520 (under seal); SDNY Dkt. No. 521 (redacted). Citations to the docket in the SDNY Litigation appear as "SDNY Dkt. No."

**BRIEF IN SUPPORT OF BLAKE LIVELY'S MOTION TO COMPEL**   1

and discovery has confirmed that this refers to thelawsuitinfo dot com, a website that the Defendants used to post their now-dismissed complaint against Ms. Lively as well as cherry-picked and distorted evidence designed to discredit Ms. Lively in the court of public opinion. But such activities are ineligible for attorney-client or work-product protection. And even if they were not, the presence of numerous *other* third parties on these communications would similarly destroy the privilege.

The Court should compel production of these documents. For the reasons explained in a concurrently filed motion, Ms. Lively also asks that the Court transfer this motion to the Southern District of New York—the issuing Court—pursuant to Federal Rule of Civil Procedure 45(f). But whichever Court decides this motion, the Skyline Parties' privilege claims must be rejected.

## BACKGROUND

Ms. Lively initiated the SDNY Litigation in connection with sexual harassment she and others experienced while filming the movie "It Ends With Us" (the "Film") and subsequent retaliation designed to "bury" and discredit her for speaking out. Ms. Lively brought her claims against Wayfarer Studios LLC ("Wayfarer"), a production company that co-financed and produced the Film and was the employer of all cast and crew on set, including Ms. Lively (Amended Complaint, SDNY Dkt. No. 84 ¶ 57), as well as Justin Baldoni, the co-founder and co-chairman of Wayfarer who co-starred in, directed, and served as a producer of the Film (*id.* ¶ 58); Jamey Heath, the CEO and former President of Wayfarer (*id.* ¶ 59); Steve Sarowitz, Wayfarer's co-chairman and financier, and several other affiliated entities, and public relations professionals (*id.* ¶¶ 60–66) (together with all Defendants, the "Wayfarer Parties"). *See* Second Amended Complaint ¶¶ 57-66, SDNY Dkt. No. 520.

Ms. Lively alleges that she and other employees, cast, and crew of the Film were subjected to sexually harassing, unwelcome, and other inappropriate behavior by Mr. Baldoni and Mr. Heath

during production of the Film (*id.* ¶¶ 75–109), and that the Wayfarer Parties retaliated against Ms. Lively for raising concerns about such behavior on set by initiating a "social manipulation" campaign to discredit and shift blame to Ms. Lively and to conceal Mr. Baldoni and Mr. Heath's behavior (the "Retaliation Campaign") (*id.* ¶¶ 183–193). Discovery in the SDNY litigation is well underway, with Judge Liman ordering all document discovery, including non-party productions, due by August 15, 2025, with the close of fact discovery due by September 30, 2025. *See* SDNY Dkt. No. 425.

The Skyline Agency is a Dallas-based digital marketing and design services company. Ms. Lively learned of The Skyline Agency's involvement with the Wayfarer Parties in this case from Skyline's appearance in documents received from another third party, Cloudflare, in response to requests seeking information regarding thelawsuitinfo dot com. Roza Kalantari is Skyline's chief marketing officer, who appears to have a long-standing relationship with TAG, despite having never been an employee of TAG at any time,[3] and Ms. Lively learned of Ms. Kalantari's involvement with the Wayfarer Parties in this case from documents and privilege logs obtained in discovery that mentioned Ms. Kalantari by name or copied her email address as early as August 2024—which tracks with the start of the retaliatory campaign. Skyline and Ms. Kalantari are represented in this action by the same law firm representing the Wayfarer Parties.

On March 10, 2025, Ms. Lively's counsel served notice of a subpoena to Skyline's counsel and served Skyline with the subpoena the following day. Declaration of Kristin E. Bender ("Bender Decl.") ¶ 3, Tab 5. Skyline served responses and objections on March 28, 2025. *Id.* Skyline first conferred with Ms. Lively's counsel to discuss the scope of the Skyline subpoena on

---

[3] TAG's attorneys—who are also Ms. Kalantari's attorneys—have unequivocally represented that "Ms. Kalantari has not, nor has she ever been an employee of TAG." Bender Decl. ¶ 11.

April 4, 2025. *Id.* ¶ 4. On April 25, 2025, Ms. Lively's counsel served notice of a subpoena to Ms. Kalantari's counsel, and four days later, personally served Ms. Kalantari. *Id.* ¶ 5, Tab 6. On May 16, 2025, Ms. Kalantari served responses and objections, and Skyline served a privilege log. *Id.* ¶ 5, Tab 1. Skyline and Ms. Lively's counsel again conferred on May 22, 2025, to discuss deficiencies raised by Ms. Lively's counsel regarding Skyline's privilege log. *Id.* ¶ 7. The Skyline Parties served an amended privilege log on May 30, 2025. *See id.* ¶ 8, Tab 2. Shortly thereafter, on June 2, 2025, Skyline and Ms. Lively's counsel conferred again to discuss Skyline's amended privilege log and Ms. Kalantari's first responses and objections to her subpoena. *Id.* ¶ 9.

The Skyline Parties served a second amended privilege log on July 24, 2025, dropping their privilege assertions as to five of the six categories of withheld documents, and maintaining their assertion of privilege over the first category: a Signal message thread including Ms. Kalantari; third parties subject to subpoenas in this case, including Rylie Long, Dervla McNiece, Breanna Koslow, Michael Lawrence, and Mitz Toskovic; third parties Spencer Freedman and Alyx Sealy; defendants Jennifer Abel, Melissa Nathan, Jamey Heath, and Jed Wallace; and counsel for defendants, Mitra Ahouraian, Bryan Freedman, Jason Sunshine, and Theresa Troupson, Esq. *Id.* ¶ 16, Tab 3. The Skyline Parties have claimed attorney-client privilege, attorney work-product protection, and common interest privilege over those communications. Ms. Kalantari served supplemental responses and objections on June 27, 2025, incorporating general objections and specifically objecting to request for production numbers 8 and 10, which seek documents and communications concerning the Scenario Planning Document, attached as Exhibit D to the Amended Complaint, and concerning communications between Ms. Kalantari and any Content Creator regarding the SDNY Litigation, Ms. Lively, Mr. Reynolds, any Wayfarer Defendant, or the Film. *Id.* ¶ 15.

**BRIEF IN SUPPORT OF BLAKE LIVELY'S MOTION TO COMPEL**     4

## LEGAL STANDARD

***Attorney-Client Privilege.*** "For a communication to be protected under the [attorney-client] privilege, the proponent must prove: (1) that he made a confidential communication; (2) to a lawyer or his subordinate; (3) for the primary purpose of securing either a legal opinion or legal services, or assistance in some legal proceeding." *EEOC v. BDO USA, L.L.P.*, 876 F.3d 690, 695 (5th Cir. 2017) (cleaned up); *see Smith v. Pergola 36 LLC*, 2022 WL 17832506, at *7 (S.D.N.Y. Dec. 21, 2022) ("[A] party invoking the attorney-client privilege must show (1) a communication between client and counsel that (2) was intended to be and was in fact kept confidential, and (3) was made for the purpose of obtaining or providing legal advice.") (cleaned up).[4] "Determining the applicability of the privilege is a highly fact-specific inquiry, and the party asserting the privilege bears the burden of proof." *EEOC*, 876 F.3d at 695 (cleaned up); *see Smith*, 2022 WL 17832506, at *7 ("[T]he burden is on a party claiming the protection of a privilege to establish those facts that are the essential elements of the privileged relationship."). "Because the attorney-client privilege has the effect of withholding relevant information from the fact-finder, it is interpreted narrowly so as to apply only where necessary to achieve its purpose." *EEOC*, 876 F.3d at 695 (cleaned up); *Universal Standard Inc. v. Target Corp.*, 331 F.R.D. 80, 86 (S.D.N.Y. 2019). "Ambiguities as to whether the elements of a privilege claim have been met are construed against the proponent." *EEOC*, 876 F.3d at 695 (cleaned up).

***Attorney Work Product.*** "The party asserting work-product protection must demonstrate that the material at issue (1) is a document or a tangible thing, (2) that was prepared in anticipation of litigation, and (3) was prepared by or for a party, or by his representative." *Universal Standard*

---

[4] Because Ms. Lively has asserted both federal and state claims, SDNY Dkt. No. 84, and "the evidence [sought] could be relevant to both sets of claims . . . 'the asserted privileges are governed by the principles of federal law.'" *Smith*, 2022 WL 17832506, at *7 (quoting *von Bulow by Auersperg v. von Bulow*, 811 F.2d 136, 141 (2d Cir. 1987)).

**BRIEF IN SUPPORT OF BLAKE LIVELY'S MOTION TO COMPEL**   5

*Inc. v. Target Corp.*, 331 F.R.D. 80, 93 (S.D.N.Y. 2019) (cleaned up). "Importantly, the materials to be protected must result from the conduct of investigative or analytical tasks to aid counsel in preparing for litigation." *Id*. (cleaned up). "[A]s a general matter public relations advice, even if it bears on anticipated litigation, falls outside the ambit of protection of the so-called 'work product' doctrine embodied in Rule 26(b)(3). That is because the purpose of the rule is to provide a zone of privacy for strategizing about the conduct of litigation itself, not for strategizing about the effects of the litigation on the client's customers, the media, or on the public generally." *Calvin Klein Trademark Tr. v. Wachner*, 198 F.R.D. 53, 55 (S.D.N.Y. 2000) (citation omitted); *see Adams v. Mem'l Hermann*, 973 F.3d 343, 349 (5th Cir. 2020) (the attorney work-product doctrine "protects materials prepared in anticipation of litigation, whether those materials were prepared by the attorney or by agents of the attorney," and accordingly "insulates a lawyer's research, analysis of legal theories, mental impressions, notes, and memoranda of witnesses' statements from an opposing counsel's inquiries") (cleaned up).

For the reasons set forth below, the Skyline Parties have failed to satisfy these burdens.

## ARGUMENT

**I.    The Materials Withheld by the Skyline Parties Are Not Privileged and Must Be Produced.**

The materials withheld by the Skyline Parties are not privileged, and no party has carried their burden to demonstrate otherwise. The withheld documents apparently consist of Signal messages including a large number of participants, including counsel for the Wayfarer Parties, Jed Wallace, various TAG employees, and Ms. Kalantari. Bender Decl. Tab 3. The topic is "Discussion re: building of website." *Id.* The Skyline Parties assert attorney-client privilege, work-product protection, and the common interest doctrine. *Id.*

**BRIEF IN SUPPORT OF BLAKE LIVELY'S MOTION TO COMPEL**                                                                 6

The attorney-client privilege claim is improper. Under federal law, "a party invoking the attorney-client privilege must show (1) a communication between client and counsel that (2) was intended to be and was in fact kept confidential, and (3) was made for the purpose of obtaining or providing legal advice." *Smith*, 2022 WL 17832506, at *7 (cleaned up). "The burden is on a party claiming the protection of a privilege to establish those facts that are the essential elements of the privileged relationship." *Id*. Further, just because two parties are *eligible* to exchange privileged communications does not mean that their communications are, in fact, privileged—that depends on the nature and purpose of the communications, which the party claiming privilege must affirmatively show. *See, e.g.*, *Mitsui O.S.K. Lines, Ltd. v. Seamaster Logistics, Inc.*, No. 12–mc–00275, 2013 WL 238176, at *3 (S.D.N.Y. Jan. 18, 2013) (Nathan, J.) ("The Court is not willing to assume that every document exchanged between Mitsui and AWAC is privileged."). The privilege "requires more than merely copying a lawyer as one addressee on a chain of emails." *In re Welspun Litig.*, No. 16-CV-6792, 2018 WL 4693587, at *3 (S.D.N.Y. Sept. 21, 2018) (Sullivan, J.); *see Tower 570 Co. LP v. Affiliated FM Ins. Co.*, No. 20-CV-0799 (JMF), 2021 WL 1222438, at *2 (S.D.N.Y. Apr. 1, 2021) (collecting cases). Instead, the privilege "attaches only if 'the predominant purpose of the communication is to render or solicit legal advice.'" *Tower 570 Co.*, 2021 WL 1222438, at *2 (cleaned up).

Here, the privilege log does not even assert that the purpose of the communications was the provision or solicitation of legal advice, much less predominantly so; it states that this category of communications involved only a "[d]iscussion" about "building a website." Bender Decl. Tab. 3. Ms. Lively understands from the other documents produced by Skyline that they were responsible for setting up thelawsuitinfo dot com, which the Wayfarer Parties used to post cherry-picked "evidence" to advance their own narrative of events underlying Ms. Lively's claims for

**BRIEF IN SUPPORT OF BLAKE LIVELY'S MOTION TO COMPEL**                                   7

public consumption and in an effort to discredit Ms. Lively in furtherance of their retaliation campaign against her. *See* SDNY Dkt. No 84 ¶ 310. Building a website is not a legal task, and talking about it is not legal advice. The Wayfarer Parties may be the type of "client [who] comes to court as prepared to massage the media as to persuade the judge," if not more so, "but nothing in the client's communications for the former purpose constitutes the obtaining of legal advice or justifies a privileged status." *Calvin Klein Trademark Tr.*, 198 F.R.D. at 55; *see In re Nw. Senior Hous. Corp.*, No. 22-30659, 2023 WL 2938386, at *5 (Bankr. N.D. Tex. Apr. 13, 2023) (same, quoting *Calvin Klein*). Because the privilege log does not even assert that much, any attorney-client privilege claim must fail. *See, e.g.*, *United States v. Fluitt*, 99 F.4th 753, 764 (5th Cir. 2024) (the burden to justify a privilege claim is not satisfied, and the privilege claim must fail, where the claimant's "privilege logs do not disclose the roles of the parties to the communications (attorney, client, neither), nor do they describe the nature of the communications (legal or non-legal) over which attorney-client privilege is asserted").

Further, any valid attorney-client privilege claim would fail because any privilege was waived through the inclusion of numerous third-parties on the email chain, most notably Ms. Kalantari herself, as she is neither an attorney, nor a party represented by the attorneys on the chain, nor a party with any arguable common interest in the subject matter of this litigation. Nor can the waiver of privilege caused by Ms. Kalantari's presence on the communications be saved on the grounds that Ms. Kalantari's role was necessary to facilitate the provision of legal advice to the Wayfarer Parties. *See, e.g.*, *Bloomingburg Jewish Educ. Ctr. v. Vill. of Bloomingburg, New York*, 171 F. Supp. 3d 136, 146–47 (S.D.N.Y. 2016). These communications were evidently about building a website used to broadcast cherry-picked evidence to the public and the media. *Supra* at 1. As is well established, however, "[a] media campaign is not a litigation strategy. Some attorneys

**BRIEF IN SUPPORT OF BLAKE LIVELY'S MOTION TO COMPEL**                                  8

may feel it is desirable at times to conduct a media campaign, but that decision does not transform their coordination of a campaign into legal advice." *Haugh v. Schroder Inv. Mgmt. N. Am. Inc.*, No. 02-CV-7955, 2003 WL 21998674, at *3 (S.D.N.Y. Aug. 25, 2003) (Cote, J.). Even assuming that Skyline's services in building a website on which the Wayfarer Parties posted documents for public access qualified as "public relations," rather than technical assistance unrelated to either media advice or legal strategy, disclosure of attorney-client privileged material to a public relations consultant waives the attorney-client privilege unless the PR consultant "performed functions essential to enable counsel . . . to provide [their clients] with legal advice." *Bloomingburg Jewish Educ. Ctr.*, 171 F. Supp. 3d at 146-47; *see In re Nw. Senior Hous. Corp.*, 2023 WL 2938386, at *2 ("[T]he question is not whether the Defendants needed a public relations firm or whether the public relations firm worked hand in hand with [counsel] in developing litigation-related communications. The question is whether [counsel] needed [the public relations firm] in order to render legal advice."). No party has made any showing that this standard is satisfied. *Universal Standard Inc.*, 331 F.R.D. at 92 ("There is no evidence that the purpose of the communications with BrandLink was to assist counsel in engaging in a legal task as opposed to allowing Universal Standard to make a decision about the nature of publicity that should be sought."); *see In re Nw. Senior Hous. Corp.*, 2023 WL 2938386, at *4 (no attorney-client privilege where the public relations firm was engaged "to persuade the public's perception" of the litigation); *Doe 1 v. Baylor Univ.*, No. 6:16-CV-173-RP, 2019 WL 13253800, at *3 (W.D. Tex. Apr. 16, 2019) (no attorney-client privilege even where counsel are copied when in context and after *in camera* review, it is "equally plausible that the purpose of the communication was to discuss public relations strategy"); *see also Fluitt*, 99 F.4th at 764 (privilege claim must fail, where the claimant's "privilege logs do not disclose the roles of the parties to the communications (attorney, client, neither), nor do they

**BRIEF IN SUPPORT OF BLAKE LIVELY'S MOTION TO COMPEL**                                              9

describe the nature of the communications (legal or non-legal) over which attorney-client privilege is asserted").

Any work-product claim must also necessarily fail as the Skyline Parties have failed to demonstrate that the material at issue was prepared in anticipation of litigation and by or for a party, or by their representative. *Universal Standard Inc.*, 331 F.R.D. at 93. "Importantly, the materials to be protected must result from the conduct of investigative or analytical tasks to aid counsel in preparing for litigation." *Id.* (cleaned up). "[A]s a general matter public relations advice, even if it bears on anticipated litigation, falls outside the ambit of protection of the so-called 'work product' doctrine embodied in Rule 26(b)(3), Fed.R.Civ.P. That is because the purpose of the rule is to provide a zone of privacy for strategizing about the conduct of litigation itself, not for strategizing about the effects of the litigation on the client's customers, the media, or on the public generally." *Calvin Klein Trademark Tr.*, 198 F.R.D. at 55. Hence, "many cases have rejected work product protection for material relating to public relations activities," and building a website to publicize the Wayfarer Parties' side of the story should be no exception. *Universal Standard Inc.*, 331 F.R.D. at 93 (collecting cases). The fact that lawyers were involved here does not change that, because the work-product doctrine "is not satisfied merely by a showing that the material was prepared at the behest of a lawyer or was provided to a lawyer." *Wultz v. Bank of China Ltd.*, 304 F.R.D. 384, 393 (S.D.N.Y. 2015); *see Fluitt*, 99 F.4th at 764 (5th Cir. 2024) ("assertions of attorney work product privilege . . . require a showing that the materials were prepared in anticipation of litigation," and must fail where "privilege logs are silent as to these dispositive facts"). Instead, "it is the specific content of the text messages—rather than their date, form, author, or recipient—that is critical to the question of whether such messages are protected under the work product doctrine." *Spencer-Smith v. Ehrlich*, No. 23-CV-2652, 2024 WL 4416581, at *9 (S.D.N.Y. Oct. 4, 2024). It

**BRIEF IN SUPPORT OF BLAKE LIVELY'S MOTION TO COMPEL**                                                          10

is the Skyline Parties and the Wayfarer Parties' burden to show that these attorneys' communications with numerous public relations professionals constituted bona fide work product, in the sense of reflecting "lawyer's legal strategy" worthy of protection "to enhance and not to impede the adversarial process and the truth-finding function of trial." *Id.* at *8. They have not satisfied that burden, but to the extent there is any doubt, *in camera* review is the only way to assess whether these materials were appropriately withheld on work-product grounds. *Id.* at *6 n.4. Further, *in camera* review would confirm whether any *actual* work-product was still of a nature that Ms. Lively's substantial need for the evidence would overcome any claim of work-product protection.

Finally, because the underlying privilege claims fail, the common-interest doctrine cannot protect them from waiver. *Smith*, 2022 WL 17832506, at *7. But even if the privilege claims were otherwise valid, the common-interest doctrine would not apply because the parties to the withheld communications do not share a common legal interest. A common interest "must be identical, not similar, and be legal, not solely commercial and the parties must have come to an agreement embodying a cooperative and common enterprise toward an identical legal strategy." *Mitsui O.S.K. Lines, Ltd.*, 2013 WL 238176, at *2. And to be protected from waiver under that doctrine, the communications must be made "under a common-interest agreement" that preexisted the communications. *United States v. Krug*, 868 F.3d 82, 87 (2d Cir. 2017) (cleaned up). Ms. Kalantari does not even arguably share a common legal interest with the other participants on the withheld communications, nor has any party explained the legal interest that the other participants may or may not have in common, much less that they *all* share the same one, or entered into a common interest agreement. To the extent the Skyline Parties' claims leave the Court with any doubt, the Court should conduct an *in camera* review of the documents at issue.

**BRIEF IN SUPPORT OF BLAKE LIVELY'S MOTION TO COMPEL**  11

## **CONCLUSION**

The Skyline Parties should be ordered to produce the withheld documents.

Respectfully submitted,

Dated: August 6, 2025  /s/ *Samuel T. Mallick*

Samuel T. Mallick, Texas Bar. No. 24109501
Haynes and Boone, LLP
2801 N Harwood St Suite 2300
Dallas, TX 75201
(214) 651-5962
sam.mallick@haynesboone.com

Laura Lee Prather, Texas Bar. No. 16234200
Michael J. Lambert, Texas Bar No. 24128020
Haynes and Boone, LLP
98 San Jacinto Boulevard
Suite 1500
Austin, TX 78701
(512) 867-8400
laura.prather@haynesboone.com
michael.lambert@haynesboone.com

Michael J. Gottlieb (*pro hac vice* forthcoming)
New York Bar No. 4424149
Kristin E. Bender (*pro hac vice* forthcoming)
New York Bar No. 5513775
Willkie Farr & Gallagher LLP
1875 K Street NW
Washington, DC  20006
(202) 303-1000
mgottlieb@willkie.com
kbender@willkie.com

Aaron E. Nathan (*pro hac vice* forthcoming)
New York Bar No. 5478227
Willkie Farr & Gallagher LLP
787 Seventh Avenue
New York, NY  10019
(212) 728-8904
anathan@willkie.com

*Attorneys for Movant Blake Lively*

**BRIEF IN SUPPORT OF BLAKE LIVELY'S MOTION TO COMPEL**   12

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was filed via CM/ECF on August 6, 2025. Notice of this filing and service will be sent in accordance with the Federal Rules of Civil Procedure.

Dated: August 6, 2025                             /s/ *Samuel T. Mallick*
                                                  Samuel T. Mallick
                                                  *Attorney for Movant Blake Lively*